IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| CUSTOM MEDIA TECHNOLOGIES LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C. A. No. 13-1421-LPS |
| | ) | |
| COMCAST CABLE COMMUNICATIONS, LLC, | ) ) | |
| | ) | |
| Defendant. | ) | |
| CUSTOM MEDIA TECHNOLOGIES LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 13-1424-LPS |
| | ) | |
| DISH NETWORK, LLC, | ) | |
| | ) | |
| Defendant. | ) | |

Richard D. Kirk, Stephen B. Brauerman, Vanessa R. Tiradentes, Sara E. Bussiere, BAYARD, P.A., Wilmington, DE.

Robert Freitas, Jason S. Angell, Jessica N. Leal, FREITAS ANGELL & WEINBURG LLP, Redwood Shores, CA.

    Attorneys for Plaintiff


Jack B. Blumenfeld, Karen Jacobs, Jennifer Ying, MORRIS, NICHOLS, ARSHT & TUNNELL LLP, Wilmington, DE.

Michael Brody, Sarah J. Kalemeris, WINSTON & STRAWN LLP, Chicago, IL.

Michael Murray, WINSTON & STRAWN LLP, New York, NY.

Alexandra McTague, WINSTON & STRAWN LLP, Palo Alto, CA.

    Attorneys for Defendant Comcast Cable Communications, LLC

Rodger D. Smith, II, MORRIS, NICHOLS, ARSHT & TUNNELL LLP, Wilmington, DE.

G. Hopkins Guy III, Alali Dagogo-Jack, BAKER BOTTS LLP, Palo Alto, CA.

Bradley Bowling, Ali Dhanani, Michael Sherby, BAKER BOTTS LLP, Houston, TX.

Jamie R. Lynn, BAKER BOTTS LLP, Washington, DC.

     Attorney for Defendant DISH Network, LLC

## **MEMORANDUM OPINION**

August 11, 2015
Wilmington, Delaware

**STARK, U.S. District Judge:**

## I.    BACKGROUND

On August 15, 2013, Custom Media Technologies LLC ("Custom Media" or "Plaintiff")

filed suit against Comcast Cable Communications, LLC and DISH Network, LLC (collectively

"Defendants")[1] alleging infringement of U.S. Patent No. 6,269,275 ("the '275 patent"). (C.A.

No. 13-1421 D.I. 1; C.A. No. 13-1424 D.I. 1) The patent-in-suit generally relates to

"customizing and distributing presentations for user sites over networks for utilization on

demand." (D.I. 1)[2]

Pending before the Court is the issue of claim construction for various disputed terms of

the patent-in-suit. The parties completed briefing on claim construction on June 9, 2015 (D.I. 58,

60, 66, 67; C.A. No. 13-1424 D.I. 59, 62, 68, 69), and filed an updated claim construction chart

on June 10, 2015 (D.I. 73). The parties also submitted technology tutorials. (D.I. 64; C.A. No.

13-1424 D.I. 65) The Court held a claim construction hearing on June 23, 2015. (D.I. 75)

("Tr.")

## II.    LEGAL STANDARDS

The ultimate question of the proper construction of a patent is a question of law. *See*

*Teva Pharm. USA, Inc. v. Sandoz, Inc.*, 135 S. Ct. 831, 837 (2015) (citing *Markman v. Westview*

*Instruments, Inc.*, 517 U.S. 370, 388-91 (1996)). "It is a bedrock principle of patent law that the

claims of a patent define the invention to which the patentee is entitled the right to exclude."

---

[1]Plaintiff filed a total of eight related cases against various defendants, all of which have been dismissed except for the two remaining cases.

[2]Unless otherwise specified, citations are to the docket in 13-1421-LPS.

1

*Phillips v. AWH Corp.*, 415 F.3d 1303, 1312 (Fed. Cir. 2005) (internal quotation marks omitted). "[T]here is no magic formula or catechism for conducting claim construction." *Id.* at 1324. Instead, the court is free to attach the appropriate weight to appropriate sources "in light of the statutes and policies that inform patent law." *Id.*

"[T]he words of a claim are generally given their ordinary and customary meaning . . . [which is] the meaning that the term would have to a person of ordinary skill in the art in question at the time of the invention, i.e., as of the effective filing date of the patent application." *Id.* at 1312-13 (internal citations and quotation marks omitted). "[T]he ordinary meaning of a claim term is its meaning to the ordinary artisan after reading the entire patent." *Id.* at 1321 (internal quotation marks omitted). The patent specification "is always highly relevant to the claim construction analysis. Usually, it is dispositive; it is the single best guide to the meaning of a disputed term." *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1582 (Fed. Cir. 1996).

While "the claims themselves provide substantial guidance as to the meaning of particular claim terms," the context of the surrounding words of the claim also must be considered. *Phillips*, 415 F.3d at 1314. Furthermore, "[o]ther claims of the patent in question, both asserted and unasserted, can also be valuable sources of enlightenment . . . [b]ecause claim terms are normally used consistently throughout the patent . . . ." *Id.* (internal citation omitted).

It is likewise true that "[d]ifferences among claims can also be a useful guide . . . . For example, the presence of a dependent claim that adds a particular limitation gives rise to a presumption that the limitation in question is not present in the independent claim." *Id.* at 1314-15 (internal citation omitted). This "presumption is especially strong when the limitation in dispute is the only meaningful difference between an independent and dependent claim, and one

2

party is urging that the limitation in the dependent claim should be read into the independent claim." *SunRace Roots Enter. Co., Ltd. v. SRAM Corp.*, 336 F.3d 1298, 1303 (Fed. Cir. 2003).

It is also possible that "the specification may reveal a special definition given to a claim term by the patentee that differs from the meaning it would otherwise possess. In such cases, the inventor's lexicography governs." *Phillips*, 415 F.3d at 1316. It bears emphasis that "[e]ven when the specification describes only a single embodiment, the claims of the patent will not be read restrictively unless the patentee has demonstrated a clear intention to limit the claim scope using words or expressions of manifest exclusion or restriction." *Liebel-Flarsheim Co. v. Medrad, Inc.*, 358 F.3d 898, 906 (Fed. Cir. 2004) (internal quotation marks omitted), *aff'd*, 481 F.3d 1371 (Fed. Cir. 2007).

In addition to the specification, a court "should also consider the patent's prosecution history, if it is in evidence." *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 980 (Fed. Cir. 1995), *aff'd*, 517 U.S. 370 (1996). The prosecution history, which is "intrinsic evidence," "consists of the complete record of the proceedings before the PTO [Patent and Trademark Office] and includes the prior art cited during the examination of the patent." *Phillips*, 415 F.3d at 1317. "[T]he prosecution history can often inform the meaning of the claim language by demonstrating how the inventor understood the invention and whether the inventor limited the invention in the course of prosecution, making the claim scope narrower than it would otherwise be." *Id.*

In some cases, "the district court will need to look beyond the patent's intrinsic evidence and to consult extrinsic evidence in order to understand, for example, the background science or the meaning of a term in the relevant art during the relevant time period." *Teva*, 135 S. Ct. at

841. Extrinsic evidence "consists of all evidence external to the patent and prosecution history, including expert and inventor testimony, dictionaries, and learned treatises." *Markman*, 52 F.3d at 980. For instance, technical dictionaries can assist the court in determining the meaning of a term to those of skill in the relevant art because such dictionaries "endeavor to collect the accepted meanings of terms used in various fields of science and technology." *Phillips*, 415 F.3d at 1318. In addition, expert testimony can be useful "to ensure that the court's understanding of the technical aspects of the patent is consistent with that of a person of skill in the art, or to establish that a particular term in the patent or the prior art has a particular meaning in the pertinent field." *Id.* Nonetheless, courts must not lose sight of the fact that "expert reports and testimony [are] generated at the time of and for the purpose of litigation and thus can suffer from bias that is not present in intrinsic evidence." *Id.* Overall, while extrinsic evidence "may be useful" to the court, it is "less reliable" than intrinsic evidence, and its consideration "is unlikely to result in a reliable interpretation of patent claim scope unless considered in the context of the intrinsic evidence." *Id.* at 1318-19. Where the intrinsic record unambiguously describes the scope of the patented invention, reliance on any extrinsic evidence is improper. *See Pitney Bowes, Inc. v. Hewlett-Packard Co.*, 182 F.3d 1298, 1308 (Fed. Cir. 1999) (citing *Vitronics*, 90 F.3d at 1583).

Finally, "[t]he construction that stays true to the claim language and most naturally aligns with the patent's description of the invention will be, in the end, the correct construction." *Renishaw PLC v. Marposs Societa' per Azioni*, 158 F.3d 1243, 1250 (Fed. Cir. 1998). It follows that "a claim interpretation that would exclude the inventor's device is rarely the correct interpretation." *Osram GmbH v. Int'l Trade Comm'n*, 505 F.3d 1351, 1358 (Fed. Cir. 2007)

4

(quoting *Modine Mfg. Co. v. U.S. Int'l Trade Comm'n*, 75 F.3d 1545, 1550 (Fed. Cir. 1996)).

## III. DISPUTED TERMS[3]

### A. "presentation"

| Plaintiff's Proposal | Defendants' Proposal | Court's Construction |
|---|---|---|
| This claim term does not require construction. | "arrangement of media components that will be played together in that arrangement" | "arrangement of media components" |

The parties dispute whether the term "presentation" needs to be construed. In arguing that no construction is necessary, Plaintiff objects to a construction whereby media components would have to be "played together in that arrangement."[4] Whether such a limitation is in the claims presents a genuine dispute, which the Court must resolve by construing "presentation." *See O2 Micro Int'l Ltd. v. Beyond Innovation Tech. Co. Ltd.*, 521 F.3d 1351, 1362 (Fed. Cir. 2008) ("When the parties present a fundamental dispute regarding the scope of a claim term, it is the court's duty to resolve it.").

The parties further dispute whether a "presentation" must be limited to a "played" presentation and whether it is a fixed arrangement. Plaintiff contends a presentation need not be

---

[3]The Court will adopt the parties' agreed-upon constructions for the terms "profile data objects" and "user profile information." (*See* D.I. 73-1) In addition, the term "broadcasting" is no longer in dispute, since the case against Defendant AT&T Services, Inc., the only Defendant that submitted a proposed construction of the term, has been dismissed. (*See* C.A. No. 13-1419 D.I. 76)

[4]Defendants' initial proposal also included the limitation that the arrangement of media components be "fixed," to which Plaintiff also objected. However, in their reply brief Defendants offered a compromise construction, which is the proposal shown in the table. (*See* D.I. 67 at 16)

"played," so long as it is playable. (Tr. 8-9) The Court sees no support in the specification for Defendants' assertion that "to even qualify as a presentation, it needs to be presented." (*Id.* at 10) So long as the presentation is playable, as an arrangement of media components, the claims do not require that presentation actually be ***played*** before falling within the scope of the claims.

The Court does agree with Defendants that the specification is clear that a presentation is a compilation or arrangement of media components.[5] For example, the figures show multiple media components making up the presentations. (*See* '245 patent, Figs. 6 and 7) In addition, the specification teaches that the components are selected to create a customized presentation. (*See id.* at col. 5 ll. 2-6) ("The set top box 18 then can combine the selected ones of the data object components to create a customized presentation for the user.")

However, the Court finds that Defendants' proposed limitation that the media components be "played together in that arrangement" is confusing and in tension with the specification, which teaches presentations that may be modified more easily than with prior art technologies. In describing the advantages of the present invention, the specification states, "The presentations can be updated or otherwise modified periodically in a flexible and efficient manner." (*Id.* at col. 3 ll. 14-16) Requiring the media components to be "played together in that arrangement" invokes the idea of "fixed" presentations (which Defendants no longer explicitly include in their construction).

---

[5]Plaintiff conceded as much in the hearing, and suggested that the Court might construe the term as "arrangement of media components." (Tr. 9)

### B. "presentation logic objects"

| Plaintiff's Proposal | Defendants' Proposal | Court's Construction |
|---|---|---|
| "data structures comprising logic for selecting media components"<br><br>Or, in the alternative: This claim term does not require construction. | Indefinite. | "data structures comprising logic for selecting media components" |

Defendants contend the term "presentation logic objects" is indefinite. Plaintiff disagrees and proposes a construction, but alternatively would be content if the Court does not adopt a construction.

Plaintiff argues that "logic and objects are terms of art in Computer Science and . . . a person of ordinary skill in the art at the time of the invention would understand that, in the context of the intrinsic evidence, logic for selecting certain media components would be included in a data structure." (D.I. 58 at 7) Defendants assert that the intrinsic record fails to define with reasonable certainty the function, structure, or properties of a presentation logic object. (*See* D.I. 60 at 15) (citing *Nautilus, Inc. v. Biosig Instruments, Inc.*, 134 S. Ct. 2120, 2129 (2014))

The claim language identifies two functions for the presentation logic objects:

What is claimed is:

1. A method for customizing and distributing presentations for user sites, comprising: . . .

creating presentation logic objects based on corresponding ones of the data objects to facilitate the creation of individual customized presentations for each one of the user computer means;

storing each one of the presentation logic objects

> individually locally in the group of user computer
> means; . . .

> selecting certain ones of the media components at each one
> of the user computer means in response to its
> presentation logic object and its data object;

('275 Patent, col. 8 l. 60 - col. 9 l. 16)  As set out in the claim, the presentation logic objects

work with the data objects "to facilitate" the creation of individualized presentations, and also

allow the system as a whole to "select[] certain . . . media components" in response to the

presentation logic object and the data object.  This is consistent with the specification, which

explains the role of the presentation logic objects in the abstract and in the description of the

present invention.  (*See, e.g.*, *id.* at col. 3 ll. 22-30) ("Presentation logic objects used in

conjunction with data objects facilitate the creation of individual customized presentations, at the

user sites. . . .  Certain ones of the media components of the media objects are selected in

response to the individual presentation logic objects and the individual data objects to create

customized presentations for the users at their user sites.")  The figures of the patent also show

the presentation logic object working with the user profile.  (*See id.* at Fig. 9) (Step 65 recites

"For each recipient, use profile and presentation logic object to combine objects for

presentation")

    In addition, the examples in the specification help give meaning to the term "presentation

logic objects."  In the Physical Therapy Example, a data object (including patient's name,

therapeutic objective, and exercise regimen) is transmitted to a fulfilling server, and "[t]he

fulfilling server does appropriate billing and creation of the presentation logic object for the

patient." (*See id.* at col. 7 ll. 21-32)  "The presentation logic object is transmitted via email to the

8

patient's set top box . . . The set top box of the patient stores the relevant objects from the multicast based on instructions from the presentation logic portion of the email." (*Id.* at ll. 32-46)

Extrinsic evidence also supports Plaintiff's position. The Edwards Declaration states: "It is self-evident that presentation logic objects (1) are objects and (2) include logic, *i.e.*, computer program instructions. The '275 patent further makes clear that this logic is for selecting one or more media components from a set of media components." (D.I. 69 ¶ 4) "[I]t has been well understood for many years than an object may include information (data) and/or logic (methods). Therefore, a profile data object is an object that contains a specific type of data, and a presentation logic object is an object that contains a specific type of logic." (*Id.* at ¶ 11) Edwards concludes, "the '275 patent provides one of ordinary skill in the art with a precise delineation of what falls within the scope of the claims and what does not fall within the scope of the claims." (*Id.* at ¶ 16)

The specification need not describe more fully the scope of the presentation logic object – in terms of timing, programming, or other properties which Defendants contend are lacking in the description – in order to not be indefinite. While the appropriate construction is certainly broad, it is supported by intrinsic and extrinsic evidence and is the appropriate construction.

### C. "creating presentation logic objects based on corresponding ones of the data objects"

| Plaintiff's Proposal | Defendants' Proposal | Court's Construction |
|---|---|---|
| "creating presentation logic objects, each based on one or more profile data objects" | This phrase, as a whole, is indefinite. (This is in addition to indefiniteness based on the "presentation logic objects" addressed above.) | "creating presentation logic objects, each based on one or more profile data objects" |

The parties dispute whether this claim term is indefinite. Plaintiff proposes the construction adopted by the Patent Trial and Appeal Board ("PTAB") in the *inter partes* review ("IPR") proceeding instituted by Cisco Systems, Inc. ("Cisco") on the '275 patent. (*See* D.I. 58 at 7) (citing D.I. 59-4 Ex. D at 13) Defendants argue, "Neither the specification nor the file history describe how to create PLOs [presentation logic objects] based on corresponding PDOs [profile data objects]" (D.I. 60 at 19), and, therefore, the term is indefinite. Defendants also contend that Plaintiff's proposal only construes the "corresponding" limitation, but does not give any construction to the term "based on." (D.I. 67 at 15) ("[T]he Board only considered whether the specification describes 'corresponding.'")

Plaintiff's declarant, Dr. Edwards, identified portions of the specification that refer to where and why the presentation logic objects are created (*see* D.I. 61 ¶ 22), but Defendants assert that the claim is indefinite since the specification does not teach *how* presentation logic objects are created. However, Dr. Edwards explains that "the technique of creating objects of different types based on a correspondence of those types was well known in the field of computer programming. . . . A person of ordinary skill would not require any specific teaching within the

10

'275 patent specification itself to use such a technique to create presentation logic objects based on profile data objects." (*Id.* at ¶ 24)

Defendants have failed to persuade the Court that this term is indefinite. Based largely on the expert testimony submitted, the Court finds that one of ordinary skill in the art would be able to determine, with reasonable certainty, how to create a presentation logic object based on a profile data object. (*See id.* at ¶ 25) ("A person of ordinary skill in the art would understand that a data structure comprising logic for a selection process can be created based on other data structures containing information (*e.g.*, demographic information, preferences, interests, etc.) about an individual user.")

### D. "gathering user profile information"

| Plaintiff's Proposal | Defendants' Proposal | Court's Construction |
|---|---|---|
| This claim term does not require construction | "collecting user profile information for users at a computer remote from the group of user computer means" | "bringing together, collecting, or assembling user profile information for users" |

The parties have agreed that the term "user profile information" is construed to mean "information about one or more user(s)." Therefore, the only dispute remaining is whether the term "gathering" should be construed. Defendants propose limiting "gathering" to "collecting . . . at a computer remote from the group of user computer means." This limitation is not consistent with the disclosures of the specification.

Defendants' proposal would limit the "gathering" of user profile information to a remote computer, the "profile compiling computer," which appears in Fig. 1 as personal computer 43. Defendants argue:

11

> The '275 patent is directed to "a method and apparatus for
> customizing and distributing presentations [to enable] a large
> number of **remotely located** user sites to receive the presentations
> on demand . . . ." Fig. 1 shows multiple examples of these
> remotely located user sites. Each of the user sites in Fig. 1 is
> remotely located from the profile compiling computer 43, which
> gathers the user profile information.

(D.I. 60 at 7) (internal citations omitted; emphasis in original)  Defendants contend that the

invention only works if the user profile information is gathered at a remote central location.  (Tr.

46)

However, there is no limitation in the claims which specifies any particular location at

which the gathering must be performed.  While the profile compiling computer appears as a

remote computer in Figure 1, Defendants' construction would improperly narrow the claim scope

to a preferred embodiment.  The claims do not limit gathering to a remote computer.

At the hearing, both parties made reference to the same dictionary definition of

"gathering" as support for their proposal.  (*See id.* at 44, 48) ("to bring together or assemble from

various places, sources, or people")  The Court has used that definition as a guide in construing

this claim term, as it encompasses the plain meaning of "gathering" and does not import

unwarranted limitations from the specification.

### E. "user computer means"

| Plaintiff's Proposal | Defendants' Proposal | Court's Construction |
|---|---|---|
| "user computer equipment, such as a personal computer or a set top box, which is adapted to receive downloaded messages or presentations" | Indefinite.<br><br>This term must be construed in accordance with 35 U.S.C. § 112, ¶ 6.<br><br>Function: computing, accessing, creating, storing, receiving, and/or selecting.<br><br>Structure: a general purpose computing device is disclosed without sufficient disclosure of how that general device performs the recited functions, thereby rendering this claim element indefinite. | Function: computing, accessing, creating, storing, receiving, and/or selecting.<br><br>Structure: The specification does not describe structure performing the claimed function. |

The parties dispute whether this is a means-plus-function claim and, if it is, Defendants argue that it is indefinite for lack of a corresponding structure. Plaintiff offers a construction should the Court determine this is not a means-plus-function claim, which is also the construction adopted by the PTAB.[6]

The claim term appears several times. For example, claim 1 recites:

> A method for customizing and distributing presentations for user sites, comprising:

---

[6]"We agree with Petitioner that 'user computer means' is user computer equipment, such as a personal computer or a set top box." (D.I. 59-4 Ex. D at 10) The PTAB expressly noted that "'user computer means' recites structure rather than function and neither party contends that the limitation should be construed according to 35 U.S.C. § 112, sixth paragraph." (*Id.* at 9; *see also* Tr. 55-56)

gathering user profile information;

creating profile data objects based on individual user profile
information;

accessing the profile data objects individually locally in
each one of a group of *user computer means*;

creating presentation logic objects based on corresponding
ones of the data objects to facilitate the creation of
individual customized presentations for each one of
the *user computer means*;

storing each one of the presentation logic objects
individually locally in the group of *user computer
means*;

broadcasting a single universal presentation media
object including a set of media components
to each one of a group of remotely located
*user computer means*;

receiving the universal presentation media object
individually at each one of the group of *user
computer means*;

selecting certain ones of the media components at each one
of the *user computer means* in response to its
presentation logic object and its data object; and

arranging selected ones of said media components
to create customized presentations for the
users.

('275 patent, col. 8 l. 61 - col. 9 l. 18) (emphasis added)

Using the word "means" raises a presumption that 35 U.S.C. § 112(6) is invoked. *See*

*Williamson v. Citrix Online, LLC*, 2015 WL 3687459, at *6 (Fed. Cir. June 16, 2015) ("[T]he use

of the word 'means' in a claim element creates a rebuttable presumption that § 112, para. 6

applies."). Plaintiff has pointed only to a general purpose computer or set top box (but no

14

algorithm for completing the functions) to satisfy the structure required by § 112(6), and contends that this is not a means-plus-function term. Plaintiff conceded at the hearing that "[t]he specification does not describe a specific programming algorithm for the personal computer." (Tr. 74)

"User computer means" appears in Claim 1 six times. Plaintiff emphasizes two of the instances – "creating presentation logic objects . . . for each one of the user computer means" and "broadcasting . . . to each one of a group of remotely located user computer means" – as support for its contention that the user computer means "does not require that the user computer means performs each of the recited steps." (D.I. 58 at 18) However, at least the other four instances of the term *are* linked to functional language. In this situation, Plaintiff has failed to rebut the presumption that the term is used as a means-plus-function term. *See Personalized Media Commc'ns, LLC v. Int'l Trade Comm'n*, 161 F.3d 696, 703-04 (Fed Cir. 1998) ("[U]se of the word 'means' creates a presumption that § 112, ¶ 6 applies . . . . [This] presumption can be rebutted if the evidence intrinsic to the patent and any relevant extrinsic evidence so warrant.").

"[A] means-plus-function claim element for which the only disclosed structure is a general purpose computer is invalid if the specification fails to disclose an algorithm for performing the claimed function." *NetMoneyIN, Inc. v. VeriSign, Inc.*, 545 F.3d 1359, 1367 (Fed. Cir. 2008). Plaintiff has identified only a general purpose computer or set top box as the associated structure.[7] For at least the "selecting" function of claim 1, there is no identified algorithm. Because there is no corresponding algorithm associated with the "selecting" function,

---

[7]While Plaintiff did not specifically assert the general purpose computer or set top box as the corresponding structure, its proposed construction confirms that this is the identified structure in the specification.

the claim term "user computer means" lacks a corresponding structure.

At the hearing, Plaintiff argued that for at least some of the uses of "user computer means," no algorithm need be disclosed, invoking the exception of *In re Katz Interactive Call Processing Patent Litigation*, 639 F.3d 1303 (Fed. Cir. 2011) (holding that there is exception to rule requiring algorithm when claimed functions "can be achieved by any general purpose computer without special programming"). Plaintiff's position is unavailing. Because not ***all*** of the uses of the term come within the *Katz* exception, the claim term lacks a corresponding structure. *See NetMoneyIN,* 545 F.3d at 1367 ("[I]n a means-plus-function claim in which the disclosed structure is a computer, or microprocessor, programmed to carry out an algorithm, the disclosed structure is not the general purpose computer, but rather the special purpose computer programmed to perform the disclosed algorithm.") (internal quotation marks omitted).

### F. "group of [remotely located] user computer means"

| Plaintiff's Proposal | Defendants' Proposal | Court's Construction |
|---|---|---|
| This claim term does not require construction. | "large number of user computer means" | This claim term does not require construction. |

The parties dispute whether this term requires construction. Defendants' proposal substitutes "large number" for "group." The intrinsic evidence does not support such a narrow construction (e.g., eliminating "small numbers"). Further, Defendants' proposed phrase, "large number," is itself ambiguous and, therefore, unhelpful to a jury.

Defendants assert that limiting "group" to a "large number" is required by the prosecution history, because the applicant disclaimed a method comprising a small number of user computers, as the solution of the invention was directed to bandwidth problems that would not

exist with only "a small number of users" involved. (C.A. 13-1419 D.I. 56 at 5) The statements

on which Defendants rely, including those in which the applicant distinguished a prior art

reference, Rapaport, arguably based on the number of users (*see id.* at 6), do not constitute a clear

and unambiguous disavowal.[8] *See Seachange Int'l, Inc. v. C-COR Inc.,* 413 F.3d 1361, 1373

(Fed. Cir. 2005). The Court agrees with Plaintiff that the distinction over Rapaport was not

dependent on the "large number" of customized individualized presentations, as Rapaport

required a browser to build a profile wherein users could retrieve media files. (*See* C.A. 13-1419

D.I. 57 Ex. D at 5-6) Although the prosecution history highlights that an advantage of the

present invention is that it could broadcast to a "large number" of users, the claims were not

amended to include a "large number" limitation.

Having rejected Defendants' position, and because "group" will be understandable to the

jury without clarification, no construction is necessary.

---

[8]Defendants purport to find a disclaimer in the following statement: "Independent claims 1 and 6 have been amended to more clearly and accurately distinguish over each one of the cited references by specifically ***emphasizing*** a large number of user computers ***can receive*** individual customized presentations without undue bandwidth considerations . . . ." (C.A. No. 13-1419 D.I. 57 Ex. C at 5-6) (emphasis added) Here, the patentee is focusing on an advantage of the claimed invention (usability with a large number of users), but is ***not*** saying the claimed invention is incapable of also being used with a small number of users.

### G.  "single universal presentation media object including a set of media components"

| Plaintiff's Proposal | Defendants' Proposal | Court's Construction |
|---|---|---|
| "common presentation media object that is broadcasted to each user computer means of a plurality of user computer means and includes a set of media components that can be used by the plurality of user computer means to locally create a customized presentation" | "single data structure including all the media components selected for broadcast, based on the gathered user profile information, as necessary to create all of the customized presentations for all users" | "single data structure including all the media components selected for broadcast, based on the gathered user profile information, as necessary to create all of the customized presentations for all users" |

The term "single universal presentation media object" does not appear in the specification.  Instead, as Defendants explain, "[t]o overcome rejections over prior art, Applicant modified the 'presentation media object' with a pair of adjectives: 'single' and 'universal.'" (D.I. 60 at 2)  The original claims, directed to "a common presentation media object," were rejected by the PTO.  (*See* C.A. No. 13-1424 D.I. 62-1 Ex. 1 at 3)  The Court agrees with Defendants' discussion of the prosecution history as follows:

> [T]he only place that Applicant ever discussed a "single universal presentation media object" was in the "Discussion of the Disclosed Embodiment of the Present Invention" of the response to the final rejection where the words "single universal" were first added. Applicant described how profile information was collected for different users to create, for example, "profile data objects and presentation logic objects reflecting Mary's interest in sports cars, John's interest in child-safety features, and Fred's need for an RV can be respectively stored on their . . . individual computers." Thereafter:
>
>> A single universal presentation objection is then created, and includes **all the media components necessary to create all of the**

> **desired customized presentations
> for the individual users.** The **single
> universal presentation object is
> broadcast over the Internet to be
> received by all the user computers**.

(D.I. 60 at 3-4 (internal citations omitted; emphases in original)) (quoting D.I. 60-1 Ex. 3 at 4-5)

### H.    "media components"

| Plaintiff's Proposal | Defendants' Proposal | Court's Construction |
|---|---|---|
| "media segments such as segments of audio, motion picture video, text video, text, graphics, programming objects, or a combination thereof" | "playable segments" | "media segments such as segments of audio, motion picture video, text video, text, graphics, programming objects, or a combination thereof" |

The parties dispute whether the "media components" must be "playable." Plaintiff argues

that only some potential media components are playable, such as audio and video components,

while others, such as text, graphics, or programming objects, need not be playable, as explained

by the specification. (*See* D.I. 58 at 5) Defendants contend that "being able to 'play' a

presentation is integral to [the invention's] very nature." (D.I. 60 at 20)

Plaintiff's proposed construction is supported by the specification, which states:

> It should be evident to someone skilled in the art that these
> segments may be of various lengths and may be audio, motion
> picture video, text video, or a combination thereof. Further, it
> should be understood to those skilled in the art that although the
> segments identified are audio or video, they may also be any other
> kind of digital information such as text, graphics or programming
> objects such as JAVA$^{TM}$ programming objects.

('275 Patent, col. 5 ll. 54-61) Construing "media components" to be limited to "playable

segments" could exclude text, graphics, or programming objects, a result which would be

inconsistent with the specification.

**"in response to its presentation logic object and its data object"**

| Plaintiff's Proposal | Defendants' Proposal | Court's Construction |
|---|---|---|
| This claim term does not require construction | "in response to both its presentation logic object and separately its data object" | "in response to both its presentation logic object and its data object" |

The only dispute in regard to this claim term is whether to add the qualifiers "both" and "separately" to the claim language. The claim requires "selecting certain ones of the media components at each one of the user computer means in response to its presentation logic object and its data object." ('275 Patent, col. 9 ll. 14-16; *see also id.* col. 5 ll. 2-4 ("The set top box 18 then selects certain ones of the media components in response to its presentation logic object and its data object")) In the Court's view, the claim's use of "and" is adequately accounted for by adding "both" to the construction; "separately" is not also needed.[9]

J.     **"arranging the selected ones of said media components to create customized presentations for the users"**

| Plaintiff's Proposal | Defendants' Proposal | Court's Construction |
|---|---|---|
| This claim term does not require construction. | "assembling, by the user computers and without user intervention, the selected media components into presentations, each presentation corresponding to a user" | This claim term does not require construction. |

The specification requires that the user computer makes the presentation by "arranging."

---

[9]At the hearing, Plaintiff indicated it did not object to adding "both." (Tr. 105)

Plaintiff asserts that this claim term is clear and requires no construction, while Defendants propose (1) substituting "assembling" for "arranging," (2) adding the limitation that the assembling is done "without user intervention," and (3) adding a limitation that the presentations correspond to a user." Much of the claim term other than "arranging" has already been construed.

The Court agrees with Plaintiff. Defendants have failed to persuade the Court that substituting "assembling" for "arranging" is required by the specification or clarifies how the invention works in a way that the claim language does not. Defendants have further failed to show that the "without user intervention" limitation is supported by the specification. Claim 1 recites that the media components are selected "at each one of the user computer means." Defendants' proposed requirement of automatic arranging is based on the embodiments disclosed in the specification, but there is no basis to import this as a limitation into the claims. Lastly, the proposal by Defendants that each presentation must correspond to a user is also unsupported.

## IV.     CONCLUSION

An appropriate Order follows.

21